## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ALTIVITY PACKAGING LLC<br>1500 Nicholas Blvd.<br>Elk Grove Village, IL 60007, and<br><br>GRAPHIC PACKAGING INTERNATIONAL, INC.,<br>814 Livingston Court<br>Marietta, GA 30067,<br><br>　　　　Defendants. | |

## COMPLAINT

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil action to enjoin the proposed merger of Graphic Packaging International, Inc. ("Graphic") and Altivity Packaging, LLC ("Altivity"). The United States alleges as follows:

### I.　NATURE OF THE ACTION

1.　On July 10, 2007, Altivity and Graphic announced plans to combine their businesses in a transaction valued at $1.75 billion. Altivity and Graphic are respectively the first and fourth largest producers of coated recycled boxboard ("CRB") in the United States and Canada (hereinafter, "North America"). CRB is a type of paperboard used to make folding cartons used in consumer and commercial packaging, such as cereal boxes. Both companies are also major integrated producers of folding cartons made from CRB (hereinafter, "CRB folding

cartons"). The total annual volume of CRB supplied to the packaging industry in North America is valued at approximately $1.6 billion.

2.      The proposed merger of Graphic and Altivity would create a single firm in control of approximately 42 percent of the total supply of CRB in North America and would likely result in increased prices of CRB. The resulting increases in CRB prices would have the further effect of increasing the prices of CRB folding cartons.

3.      Unless the transaction is enjoined, the proposed merger of Graphic and Altivity would likely substantially lessen competition in the supply of CRB in North America, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## II.      JURISDICTION AND VENUE

4.      The United States brings this action under Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18. This Court has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25 and 28 U.S.C. §§ 1331, 1337(a), and 1345.

5.      Graphic and Altivity produce and sell CRB and CRB folding cartons in the flow of interstate commerce, and their production and sale of CRB and CRB folding cartons substantially affect interstate commerce. Defendants have consented to venue and personal jurisdiction in this judicial district.

## III.      THE DEFENDANTS

6.      Altivity, a Delaware limited liability company headquartered in Elk Grove Village, Illinois, is the largest CRB producer in North America. Altivity is also a major North American producer (or "converter") of folding cartons made from CRB and other types of

paperboard. Altivity owns and operates five paperboard mills that produce CRB and 24 folding

carton converting plants in North America. Altivity's CRB mills have a combined annual

production capacity of approximately 722,000 tons, or about 27 percent of total North American

CRB supply. In 2006, Altivity had total sales of approximately $2 billion, including

approximately $660 million in North American sales of CRB and CRB folding cartons.

      7.     Graphic, the fourth-largest CRB producer in North America, is incorporated in

Delaware and has its principal place of business in Marietta, Georgia. In North America,

Graphic owns and operates one CRB paperboard mill, the single largest CRB mill in North

America, as well as 19 folding carton converting plants that produce folding cartons from CRB

and other types of paperboard. Graphic's CRB mill has a total annual production capacity of

approximately 390,000 tons, or about 15 percent of total North American CRB supply. In 2006,

Graphic's total sales were approximately $2.4 billion, including approximately $357 million in

North American sales of CRB and CRB folding cartons.

      8.     Graphic also is the largest North American producer of coated unbleached kraft

("CUK"), another type of paperboard. Graphic operates two CUK mills with a total annual

production capacity of approximately 1.3 million tons, or about 55 percent of total North

American CUK supply. In 2006, Graphic had approximately $1 billion in North American sales

of CUK and CUK folding cartons.

## IV.    RELEVANT MARKET

**A.    Relevant Product Market**

      9.     CRB is a type of paperboard (often called a "substrate" in the packaging industry)

made from recycled paper. CRB is manufactured by forming and building up multiple layers (or

"plys") of recycled fiber, and then applying a clay coating to the top layer. The clay-coated top

3

layer provides CRB with a smooth surface for good graphics printability. The bottom layer is left in the natural color of the recycled fiber, typically a greyish or brownish hue, depending on the type of fiber used (grey, if recycled newsprint is used; brown, if recycled corrugated boxes are used). CRB is an intermediary product that undergoes conversion into folding cartons.

10.    CRB is the preferred paperboard substrate for a wide range of relatively low-cost folding carton applications, including dry food cartons such as cereal boxes. CRB typically is the single largest cost component of such folding cartons, accounting for as much as 65 percent of the cost of the folding carton.

11.    Uncoated recycled boxboard ("URB") is a lower-grade and lower-cost paperboard compared to CRB. Major uses of URB are in the construction industry (as backing for gypsum wallboard) and in making paperboard cores and tubes (such as industrial cores for winding rolls of paper and other flexible materials, commercial mailing tubes, and tubes for paper towels and toilet paper rolls). URB is not a close substitute for CRB in folding carton applications because it lacks the smooth coated surface needed for good graphics printability.

12.    CUK is a clay-coated paperboard made from virgin wood pulp rather than recycled paper, and has a brown-colored back. CUK has greater strength and wet-resistance than CRB and is more expensive than CRB on a price per ton basis. The large majority of CUK produced in North America is used to make beverage carriers (beer and soft-drink cartons) and refrigerated and frozen food packaging, where it is valued for its high strength and wet-resistance properties. Graphic is the larger of the only two North American CUK producers. Altivity does not produce CUK.

13.    Solid bleached sulfate ("SBS") is another type of paperboard made from virgin wood pulp. Produced from bleached white pulp, SBS is the most expensive and highest grade of

4

paperboard used in the folding carton industry. SBS has a bright white finish on both sides, in contrast to CUK's brown back and CRB's grey or brown back. SBS affords the best printing surface of the paperboard grades, and is thus preferred despite its higher cost when superior printability is required. Consequently, SBS is often used to make cartons for higher-priced consumer goods, such as pharmaceuticals, cosmetics, and health and beauty products. When appropriately coated, SBS is also used in certain types of packaging that comes into direct contact with food, again due to manufacturer and consumer preferences for its white appearance. Neither Graphic nor Altivity produces SBS.

14.    Because of the price and performance distinctions between CRB and the other folding carton substrates, few customers of CRB and CRB folding cartons consider URB, CUK, or SBS to be economical substitutes for CRB. Further, even where another substrate can provide acceptable performance at a similar price, few customers will switch from their existing substrate to an alternative substrate because doing so is time consuming, costly, and risky. The customer must first qualify the alternative substrate, and switching often requires modification of folding carton converting equipment and end-users' packaging lines. Customers of CRB and CRB folding cartons likely would not switch to URB, CUK, SBS, or any other potential substitutes in response to a small but significant and non-transitory increase in CRB prices to an extent that would make such a price increase unprofitable. Accordingly, CRB constitutes a relevant product market within the meaning of the Clayton Act.

15.    Based on relative price and performance for some customers, CUK is the next closest substitute for CRB, and any switching by CRB customers to another substrate in response to a small but significant and non-transitory increase in CRB prices would primarily be to CUK.

5

As alleged in paragraph 14, switching by some customers to CUK would not be sufficient to make a CRB price increase unprofitable, for reasons including that the two producers of CUK are currently operating at near-capacity. If such switching to CUK would constrain a CRB price increase, however, CRB and CUK would constitute a relevant product market within the meaning of the Clayton Act, and the relevant market would be no larger than CRB and CUK.

**B.    Relevant Geographic Market**

16.    North America is a relevant geographic market for the supply of CRB, and for the supply of CRB and CUK, within the meaning of the Clayton Act. Due to relatively high transportation costs, unfavorable currency exchange rates, and other cost and marketing disadvantages to importing foreign CRB, CUK, or potential substitutes for CRB or CUK into North America, a small but significant increase in the prices of CRB produced in North America would not likely cause foreign suppliers to increase North American sales in sufficient volumes to make such a price increase unprofitable.

## V.    ANTICOMPETITIVE EFFECTS

17.    Since 2005, the North American CRB market has experienced significant producer consolidations, including CRB mill closures that have caused the removal of hundreds of thousands of tons of CRB production capacity. As a result, the market has become highly concentrated, with Altivity and Graphic becoming the first and fourth largest of only four major producers. The recent producer consolidations and capacity reductions in North America have resulted in high capacity utilization rates by the remaining producers, and have significantly constrained the market supply of CRB.

18.    If the proposed merger of Graphic and Altivity is permitted to occur, the North American CRB market would become substantially more concentrated. The combination of

6

Graphic and Altivity would control approximately 42 percent of total North American CRB supply. The market would have only three major competitors controlling a collective market share of approximately 86 percent. Using a standard concentration measure called the Herfindahl-Herschman Index (or "HHI," defined and explained in Appendix A), the proposed merger would substantially raise market concentration in a highly concentrated market, producing an HHI increase of approximately 788 and a post-merger HHI of approximately 2745.

19.     Even if the relevant product market were broader than CRB and included CUK, the proposed merger of Graphic and Altivity would also substantially increase concentration in the North American market. The merger would produce a single firm controlling approximately 49 percent of total North American supply of CRB and CUK, combining Graphic's 35 percent and Altivity's 14 percent. The four remaining major competitors would have a collective market share of approximately 94 percent. The merger would substantially raise market concentration in a highly concentrated market, producing an HHI increase of approximately 991 and a post-merger HHI of approximately 3155.

20.     The proposed merger would produce a further substantial consolidation of the North American CRB market and eliminate significant head-to-head competition between Graphic and Altivity, substantially lessening competition and likely causing higher CRB prices than there would be without the merger. These CRB price increases are also likely to cause increases in the prices of CRB folding cartons.

21.     Producers of CUK are not likely to defeat an increase in the price of CRB after the merger of Graphic and Altivity. Graphic produces more than half of the CUK sold in North America, and would not have an incentive to undermine a post-merger increase in the price of CRB. The only other North American CUK producer is operating at nearly full capacity and

7

would not increase its sales of CUK or other potential substitutes for CRB by an amount sufficient to undermine a post-merger increase in CRB prices.

## VI.    ABSENCE OF COUNTERVAILING FACTORS

22.    Supply responses from competitors or potential competitors will not prevent the likely anticompetitive effects of the proposed merger. Existing North American CRB producers face capacity and other operational limitations that would constrain them from significantly expanding output in response to a post-merger Graphic-Altivity increase in the price of CRB. Further, to the extent that they have any additional capacity to produce more CRB, these producers would likely support a Graphic-Altivity price increase by raising their own prices.

23.    Foreign producers import into North America small quantities of CRB and potential substitutes for CRB. The ability of foreign paperboard producers to expand imports into North America is limited by their commitments to home and other markets that are more profitable than North America, as well as significant transportation, currency exchange, and other disadvantages and competitive constraints to importing into North America. Thus, the potential for expansion of foreign supply, by itself or in combination with other supply responses, would not likely be sufficient to constrain a small but significant and non-transitory North American CRB price increase.

24.    New entry into the production and sale of CRB or CUK is costly and time consuming. Among other things, entry would require investments of over $100 million and two years or more to construct and install production equipment and facilities. New entry is not likely to occur on a timely or sufficient basis in response to a small but significant and non-transitory post-merger CRB price increase in North America.

8

25.     The anticompetitive effects of the proposed Graphic-Altivity merger are not likely to be eliminated or mitigated by any efficiencies that may be achieved by the merger.

## VII.     VIOLATION ALLEGED

26.     The United States hereby incorporates paragraphs 1 through 25.

27.     The proposed merger of Graphic and Altivity would likely substantially lessen competition in interstate trade and commerce, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and would likely have the following effects, among others:

(a)     actual and potential competition between Graphic and Altivity for CRB sales would be eliminated; and

(b)     competition generally in the North American market for CRB (or in a North American market for CRB and CUK) would be substantially lessened.

## PRAYER FOR RELIEF

The United States requests:

1.     That the proposed acquisition be adjudged to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

2.     That the Defendants be permanently enjoined and restrained from carrying out the proposed merger or from entering into or carrying out any other agreement, understanding, or plan by which Graphic would acquire, be acquired by, or merge with, any of the other Defendants;

3.     That the United States be awarded costs of this action; and

4.     That the United States have such other relief as the Court may deem just and proper.

Respectfully submitted,

_Thomas O. Barnett_
Thomas O. Barnett (DC Bar No. 426840)
Assistant Attorney General

_Deborah A. Garza_
Deborah A. Garza (DC Bar No. 395259)
Deputy Assistant Attorney General

_J. Robert Kramer II_
J. Robert Kramer II
Director of Operations

_Joshua H. Soven_
Joshua H. Soven, Chief (DC Bar No. 436633)
Joseph M. Miller, Assistant Chief
(DC Bar No. 439965)
Litigation I Section
joshua.soven@usdoj.gov
(202) 307-0827

_Weeun Wang_
Weeun Wang
Kent Brown
Michael K. Hammaker  (DC Bar No. 233684)
Jon B. Jacobs (DC Bar No. 412249)
Karl D. Knutsen
Justin M. Dempsey  (DC Bar No. 425976)
David C. Kelly
Barry L. Creech
Rebecca Perlmutter
Richard D. Mosier  (DC Bar No. 492489)
Scott I. Fitzgerald
Michael T. Koenig
Paul J. Torzilli
Trial Attorneys
U.S. Department of Justice
Antitrust Division
Litigation I Section
1401 H Street, NW, Suite 4000
Washington, D.C.  20530
weeun.wang@usdoj.gov
(202) 307-3952

Dated: March 5, 2008

10

# APPENDIX A

**APPENDIX A**

### Herfindahl-Hirschman Index

"HHI" means the Herfindahl-Hirschman Index, a commonly accepted measure of market concentration. It is calculated by squaring the market share of each firm competing in the market and then summing the resulting numbers. For example, for a market consisting of four firms with shares of 30%, 30%, 20%, and 20%, the HHI is 2600 ($30^2 + 30^2 + 20^2 + 20^2 = 2600$). The HHI takes into account the relative size distribution of the firms in a market and approaches zero when a market consists of a large number of small firms. The HHI increases both as the number of firms in the market decreases and as the disparity in size between those firms increases.

Markets in which the HHI is between 1000 and 1800 points are considered to be moderately concentrated, and those in which the HHI is in excess of 1800 points are considered to be highly concentrated. *See Horizontal Merger Guidelines* ¶ 1.51 (revised Apr. 8, 1997). Transactions that increase the HHI by more than 100 points in concentrated markets presumptively raise antitrust concerns under the guidelines issued by the U.S. Department of Justice and Federal Trade Commission. *See id.*

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| THE UNITED STATES OF AMERICA | ALTIVITY PACKAGING, L.L.C.; GRAPHIC PACKAGING INTERNATIONAL, INC. |

|  |  |
|---|---|
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT      Du Page, IL<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF<br>LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Weeun Wang<br>U.S. Department of Justice, 1401 H Street, N.W.,<br>Washington, DC 20530<br>(202) 307-3952 | Joseph F. Tringali  (Altivity)<br>Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue,<br>New York, NY 10017<br>(212) 455-2000<br><br>Randall L. Allen  (Graphic)<br>Alston & Bird LLP<br>1201 West Peachtree Street<br>Atlanta, GA 30309<br>(404) 881-7000 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

◉ 1 U.S. Government Plaintiff

○ 2 U.S. Government Defendant

○ 3 Federal Question
(U.S. Government Not a Party)

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**◉ A. Antitrust**

[X] 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- [ ] 151 Medicare Act

**Social Security:**
- [ ] 861 HIA ((1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g)
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g)

**Other Statutes**
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)      OR      ○ F. Pro Se General Civil**

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 610 Agriculture
- [ ] 620 Other Food &Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 RR & Truck
- [ ] 650 Airline Regs
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**Other Statutes**
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 470 Racketeer Influenced & Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 900 Appeal of fee determination under equal access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ◎ G. *Habeas Corpus/ 2255* | ◎ H. *Employment Discrimination* | ◎ I. *FOIA/PRIVACY ACT* | ◎ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ◎ K. *Labor/ERISA (non-employment)* | ◎ L. *Other Civil Rights (non-employment)* | ◎ M. *Contract* | ◎ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ◎ 2 Removed from State Court   ◎ 3 Remanded from Appellate Court   ◎ 4 Reinstated or Reopened   ◎ 5 Transferred from another district (specify)   ◎ 6 Multi district Litigation   ◎ 7 Appeal to District Judge from Mag. Judge

**VI.  CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Action to enjoin proposed merger under Section 7 of the Clayton Act, 15 USC § 18

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** ⌐ ‾ ‾ ‾ ‾ ‾ ‾ ¬ | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☐   NO ☐ |

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  3/5/2008   SIGNATURE OF ATTORNEY OF RECORD  _(signature)_

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA,

       Plaintiff,

   v.

ALTIVITY PACKAGING, LLC and
GRAPHIC PACKAGING INTERNATIONAL, INC.,

       Defendants.

---

## ASSET PRESERVATION STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

### I.    DEFINITIONS

As used in this Asset Preservation Stipulation and Order:

A.    "Acquirer" or "Acquirers" means the entity or entities to whom Defendants divest some or all of the Divestiture Mills.

B.    "Altivity" means Defendant Altivity Packaging, LLC, a Delaware limited liability company with its headquarters in Elk Grove Village, Illinois, its direct and indirect parents, private equity owners or partners, successors, assigns, subsidiaries, divisions, groups, affiliates, partnerships, joint ventures, and their directors, officers, managers, agents, and employees.

C.    "Graphic" means Defendant Graphic Packaging International, Inc., a Delaware corporation with its headquarters in Marietta, Georgia, its direct and indirect parents, successors, assigns, subsidiaries, divisions, groups, affiliates, partnerships, joint ventures, and their directors, officers, managers, agents, and employees.

D.    "CRB" means coated recycled boxboard.

E.    "Divestiture Mills" means Altivity's CRB mill located at 455 Factory Street, Wabash, Indiana 46992 (the "Wabash Mill"), including all Mill Assets relating to the Wabash Mill, Altivity's CRB mill located at 5000 Flat Rock Road, Philadelphia, Pennsylvania 19127 (the "Philadelphia Mill"), including all Mill Assets relating to the Philadelphia Mill, and the Alternative Asset.

F.    "Mill Assets" means:

(1)    all tangible assets used in, devoted to, or necessary to the operations of a Divestiture Mill, including but not limited to all such assets relating to research and development activities, manufacturing equipment, tooling and fixed assets, real property (leased or owned), personal property, inventory, CRB reserves, information technology systems, office furniture, materials, supplies, docking facilities, on- or off-site warehouses or storage facilities; all licenses, permits and authorizations issued by any governmental organization; all contracts, agreements, leases (including renewal rights), commitments, certifications, and understandings, including supply agreements; customer lists, accounts, and credit records; all interests in, and contracts relating to, power generation; all repair and performance records and all other records; and

(2)    all intangible assets used in, devoted to, or necessary to the operations of a Divestiture Mill, including but not limited to all contractual rights, patents, licenses and sublicenses, intellectual property, technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, quality assurance and control procedures, environmental studies or assessments, design tools and simulation capability, all manuals and technical

2

information provided to the employees, customers, suppliers, agents or licensees, and all research

data concerning historic and current research and development efforts, including, but not limited

to designs of experiments, and results of successful and unsuccessful designs and experiments.

G.     "Alternative Asset" means the Altivity CRB mill located at 2600 De La Cruz

Blvd, Santa Clara, California 95050 (the "Santa Clara Mill"), including all Mill Assets relating to

the Santa Clara Mill.

## II.    OBJECTIVES

The proposed Final Judgment filed in this case is meant to ensure Defendants' prompt

divestiture of the Divestiture Mills that are required to be divested under the proposed Final

Judgment for the purpose of maintaining competition in the market for the production and sale of

CRB in North America in order to remedy the anticompetitive effects that the United States

alleges would otherwise result from the Defendants' merger.  This Asset Preservation Stipulation

and Order ensures that until the divestitures required by the proposed Final Judgment have been

accomplished, the Divestiture Mills remain as economically viable, competitive, and ongoing

business concerns.

## III.    JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action, and Defendants waive

all objections to the Court's exercise of personal jurisdiction over Defendants in this action and

to the propriety of venue in the United States District Court for the District of Columbia.

## IV.    COMPLIANCE WITH AND ENTRY OF PROPOSED FINAL JUDGMENT

A.     The parties stipulate that a proposed Final Judgment in the form attached hereto as

Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the

Court's own motion, at any time after compliance with the requirements of the Antitrust

Procedures and Penalties Act, 15 U.S.C. § 16, and without further notice to any party or other

proceedings, provided that the United States has not withdrawn its consent, which it may do at

any time before the entry of the proposed Final Judgment by serving notice thereof on

Defendants and by filing that notice with the Court.

B.    Defendants shall abide by and comply with the provisions of the proposed Final

Judgment, pending the proposed Final Judgment's entry by the Court, or until expiration of time

for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall,

from the date of the signing of this Stipulation by the parties, comply with all the terms and

provisions of the proposed Final Judgment as though the same were in full force and effect as an

order of the Court.

C.    Defendants shall not consummate the transaction sought to be enjoined by the

Complaint herein before the Court has signed this Asset Preservation Stipulation and Order.

D.    This Stipulation shall apply with equal force and effect to any amended proposed

Final Judgment agreed upon in writing by the parties and submitted to the Court.

E.    In the event:

(1)    the United States has withdrawn its consent, as provided in Section IV(A)

above, or

(2)    the proposed Final Judgment is not entered pursuant to this Stipulation, the

time has expired for all appeals of any Court ruling declining entry of the proposed Final

Judgment, and the Court has not otherwise ordered continued compliance with the terms

and provisions of the proposed Final Judgment,

then the parties are released from all further obligations under this Stipulation, and the making of

this Stipulation shall be without prejudice to any party in this or any other proceeding.

4

F.     Defendants represent that the divestitures ordered in the proposed Final Judgment can and will be made, and that Defendants will later raise no claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V.     ASSET PRESERVATION PROVISIONS

Until the divestitures required by the proposed Final Judgment have been accomplished:

A.     Defendants shall take all steps necessary to preserve, maintain, and continue to operate the Divestiture Mills as economically viable, competitive, and ongoing businesses. Within twenty calendar (20) days after the entry of the Asset Preservation Stipulation and Order, Defendants will inform the United States of the steps Defendants have taken to comply with this Asset Preservation Stipulation and Order.

B.     Defendants shall use their best efforts to maintain and increase the sales and revenues of the products produced by or sold by the Divestiture Mills, and shall maintain at 2007 or previously approved levels for 2008, whichever are higher, all promotional, advertising, sales, technical assistance, marketing, and merchandising support for the Divestiture Mills.

C.     Defendants shall provide sufficient working capital and lines and sources of credit to continue to maintain the Divestiture Mills as economically viable, competitive, and ongoing businesses, consistent with the requirements of Section V(A).

D.     Defendants shall take all steps necessary to ensure that the Divestiture Mills are fully maintained in operable condition at no less than current capacity and sales levels, and shall maintain and adhere to all normal repair and maintenance schedules for the Divestiture Mills. Further, Defendants shall make all investments and capital expenditures scheduled as of March 1, 2008.

E.      Defendants shall replace the temporary boiler currently employed at the Philadelphia Mill, and shall install a new permanent boiler with capacity sufficient to maintain CRB production at full mill capacity and at full operational efficiency at all times throughout the mill's annual operating cycle.

F.      Defendants shall not, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, remove, sell, lease, assign, transfer, pledge, or otherwise dispose of any of assets of the Divestiture Mills.

G.      Defendants shall use their best efforts to preserve the existing relationships with each of the Divestiture Mills' suppliers, customers, and others having business relations with the Divestiture Mills, in the ordinary course of the Divestiture Mills' business and in accordance with past practice.

H.      Defendants' employees with primary responsibility for the production, operation, distribution, and sale of the products sold by the Divestiture Mills, shall not be transferred or reassigned to other areas within the company except for transfer bids initiated by employees pursuant to Defendants' regular, established job posting policy. Defendants shall provide the United States with ten (10) calendar days notice of any such transfer.

I.      Defendants shall take no action that would jeopardize, delay, or impede the sale of the Divestiture Mills.

J.      Defendants shall maintain, in accordance with sound accounting principles, separate, accurate and complete financial ledgers, books and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues and income of the Divestiture Mills.

K.      Donald W. Sturdivant shall have managerial responsibility for and shall oversee

6

the Divestiture Mills, subject to the provisions of the proposed Final Judgment. In the event Mr. Sturdivant is unable to perform his duties, Ed Byczynski shall replace Mr. Sturdivant and assume his duties. In the event that Mr. Byczynski is unable to perform his duties, Defendants shall appoint, subject to the approval of the United States, a replacement within ten (10) working days. Should Defendants fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement.

L.     Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the proposed Final Judgment to complete the divestitures pursuant to the proposed Final Judgment to an Acquirer acceptable to the United States.

M.     This Asset Preservation Stipulation and Order shall remain in effect until consummation of the divestitures required by the proposed Final Judgment or until further order of the Court.

Dated: March 5, 2008

Respectfully submitted,

FOR PLAINTIFF
UNITED STATES OF AMERICA

Weeun Wang, Attorney
United States Department of Justice
Antitrust Division, Litigation I Section
1401 H Street, NW, Suite 4000
Washington, DC 20530
(202) 307-3952

FOR DEFENDANT
ALTIVITY PACKAGING LLC

Joseph F. Tringali, Esq.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3954
(212) 455-2000

FOR DEFENDANT
GRAPHIC PACKAGING
INTERNATIONAL, INC.

Randall L. Allen, Esq.
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
(404) 881-7000

ORDER

IT IS SO ORDERED by the Court, this ____ day of _____, 2008.

_____
United States District Judge

8

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>    v.<br><br>ALTIVITY PACKAGING, LLC and<br>GRAPHIC PACKAGING INTERNATIONAL INC.,<br><br>      Defendants. | |

## PLAINTIFF UNITED STATES' EXPLANATION
## OF CONSENT DECREE PROCEDURES

Plaintiff United States of America submits this memorandum summarizing the

procedures for entry of the proposed Final Judgment as set forth by the Antitrust Procedures and

Penalties Act, 15 U.S.C. §§ 16(b)-(h) (the "APPA"), which applies in civil antitrust cases

brought and settled by the United States. As described below, the APPA provides that certain

events must occur prior to the Court signing and entering the proposed Final Judgment to resolve

this case.

      1.      Today, Plaintiff has filed a Complaint, proposed Final Judgment, Competitive

Impact Statement, and Asset Preservation Stipulation and Order (the "Stipulation").

      2.      Defendants have agreed in the Stipulation that they will abide by the terms of the

proposed Final Judgment in the interim and also follow certain procedures described in the

Stipulation between consummation of their merger and the divestitures required by the proposed

Final Judgment. At this time, we ask that the Court only sign the Stipulation.

      3.      The Stipulation also contains the parties' agreement that, after compliance with

the APPA, the Court may enter the proposed Final Judgment. The APPA requires that Plaintiff publish the proposed Final Judgment and the Competitive Impact Statement in the *Federal Register* and in certain newspapers at least sixty (60) days prior to entry of the proposed Final Judgment. The notice will inform members of the public that they may submit comments about the proposed Final Judgment to the United States Department of Justice, Antitrust Division (*see* 15 U.S.C. §§ 16(b)-(c)).

4.      During the sixty-day period, Plaintiff will consider, and at the close of that period respond to, any comments that it has received, and it will publish the comments and Plaintiff's responses in the *Federal Register*.

5.      After the expiration of the sixty-day period, Plaintiff will file with the Court the comments and Plaintiff's responses, and Plaintiff either will ask the Court to enter the Final Judgment (subject to any proposed revisions) or will withdraw its consent to entry of the Final Judgment, as provided in Section IV(A) of the Stipulation (*see* 15 U.S.C. § 16(d)).

6.      If Plaintiff requests that the Court enter the proposed Final Judgment after compliance with the APPA, 15 U.S.C. §§ 16(e)-(f), then the Court may enter the Final Judgment without a hearing, provided that the Court concludes that the Final Judgment is in the public interest.

Dated: March 5, 2008

FOR PLAINTIFF
UNITED STATES OF AMERICA

Weeun Wang, Attorney
Litigation I Section
United States Department of Justice
Antitrust Division
1401 H Street NW, Suite 4000
Washington, DC 20530
(202) 207-3952

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

ALTIVITY PACKAGING, LLC and
GRAPHIC PACKAGING INTERNATIONAL, INC.,

        Defendants.

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on March 5, 2008, and Plaintiff and Defendants, Altivity Packaging, LLC ("Altivity") and Graphic Packaging International, Inc. ("Graphic"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by Defendants to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or

difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.    Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## II.    Definitions

As used in this Final Judgment:

A.    "Acquirer" or "Acquirers" means the entity or entities to whom one or more Divestiture Mills are divested pursuant to this Final Judgment.

B.    "Altivity" means Defendant Altivity Packaging, LLC, a Delaware limited liability company with its headquarters in Elk Grove Village, Illinois, its direct and indirect parents, private equity owners or partners, successors, assigns, subsidiaries, divisions, groups, affiliates, partnerships, joint ventures, and their directors, officers, managers, agents, and employees.

C.    "Graphic" means Defendant Graphic Packaging International, Inc., a Delaware corporation with its headquarters in Marietta, Georgia, its direct and indirect parents, successors, assigns, subsidiaries, divisions, groups, affiliates, partnerships, joint ventures, and their directors, officers, managers, agents, and employees.

D.    "CRB" means coated recycled boxboard.

E.    "Divestiture Mills" means Altivity's CRB mill located at 455 Factory Street,

Wabash, Indiana 46992 (the "Wabash Mill"), including all Mill Assets relating to the Wabash Mill

and Altivity's CRB mill located at 5000 Flat Rock Road, Philadelphia, Pennsylvania 19127 (the

"Philadelphia Mill"), including all Mill Assets relating to the Philadelphia Mill.

      F.        "Mill Assets" means:

      (1)     all tangible assets used in, devoted to, or necessary to the operations of a

Divestiture Mill, including but not limited to all such assets relating to research and development

activities, manufacturing equipment, tooling and fixed assets, real property (leased or owned),

personal property, inventory, CRB reserves, information technology systems, office furniture,

materials, supplies, docking facilities, on- or off-site warehouses or storage facilities; all licenses,

permits and authorizations issued by any governmental organization; all contracts, agreements,

leases (including renewal rights), commitments, certifications, and understandings, including

supply agreements; customer lists, accounts, and credit records; all interests in, and contracts

relating to, power generation; all repair and performance records and all other records; and

      (2)     all intangible assets used in, devoted to, or necessary to the operations of a

Divestiture Mill, including but not limited to all contractual rights, patents,  licenses and

sublicenses, intellectual property, technical information, computer software and related

documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols,

specifications for materials, specifications for parts and devices, safety procedures for the handling

of materials and substances, quality assurance and control procedures, environmental studies or

assessments, design tools and simulation capability, all manuals and technical information

provided to the employees, customers, suppliers, agents or licensees, and all research data

concerning historic and current research and development efforts, including, but not limited to

designs of experiments, and results of successful and unsuccessful designs and experiments.

G.      "Alternative Asset" means that Altivity's CRB mill located at 2600 De La Cruz

Blvd, Santa Clara, California 95050 (the "Santa Clara Mill"), including all Mill Assets relating to

the Santa Clara Mill, is deemed a Divestiture Mill if the conditions set forth in Section V(A)(2) of

this Final Judgment are satisfied.

### III.      Applicability

A.      This Final Judgment applies to Defendants, as defined above, and all other persons

in active concert or participation with Defendants who receive actual notice of this Final

Judgment by personal service or otherwise.

B.      If, prior to complying with Sections IV and V of this Final Judgment, Defendants

sell or otherwise dispose of all or substantially all of their assets that include the Divestiture Mills,

they shall require, as a condition of the sale or other disposition, that the purchaser or purchasers

agree to be bound by the provisions of this Final Judgment.  Defendants need not obtain such an

agreement from an Acquirer under this Final Judgment.

### IV.      Divestitures

A.      Defendants are ordered and directed, within 120 calendar days after the filing of

the Complaint in this matter, or five (5) days after notice of the entry of this Final Judgment by the

Court, whichever is later, to divest the Wabash Mill and the Philadelphia Mill in a manner

consistent with this Final Judgment to an Acquirer or Acquirers approved by the United States in

its sole discretion.  The United States, in its sole discretion, may agree to one or more extensions

of this time period not to exceed sixty (60) days in total, and shall notify the Court in such

circumstances.  Defendants agree to use their best efforts to divest the Wabash and Philadelphia

Mills as expeditiously as possible.

B.      Defendants promptly shall make known, by usual and customary means, the

-4-

availability of the Wabash and Philadelphia Mills to be divested pursuant to Section IV(A) of this

Final Judgment. Defendants shall inform any person making inquiry that the divestitures are

pursuant to this Final Judgment and provide that person with a copy of this Final Judgment.

Unless the United States otherwise consents in writing, Defendants shall offer to furnish to all

prospective Acquirers, subject to customary confidentiality assurances, all information and

documents relating to the divestitures that customarily are provided in a due diligence process

except such information or documents subject to the attorney client or work product privilege.

Defendants shall make available such information to the United States at the same time that such

information is made available to any other person.

   C.  Unless the United States otherwise consents in writing, Defendants shall provide an

Acquirer and the United States information relating to Defendants' personnel involved in

management, production, operations, or sales activities of a Divestiture Mill to enable an Acquirer

to make offers of employment. Defendants will not prevent or interfere with any efforts by an

Acquirer to employ any of Defendants' officers, directors, or employees having any executive,

management, production, operations, sales, or other responsibilities relating to a Divestiture Mill,

and if requested, will release any such person from any non-compete agreement with Defendants.

   D.  Unless the United States otherwise consents in writing, Defendants shall permit

prospective Acquirers of a Divestiture Mill to have reasonable access to personnel and to make

inspections of all relevant physical facilities; access to any and all environmental, zoning, and other

permit documents and information; and access to any and all financial, operational, and other

documents and information customarily provided as part of a due diligence process, provided that

Defendants only need to comply with this provision as to the Alternative Asset in the event that

the Alternative Asset is to be divested pursuant to Section V(A) of this Final Judgment.

E.    Defendants shall warrant to an Acquirer of a Divestiture Mill that the Divestiture Mill and all related Mill Assets will be operational on the date of sale.

F.    Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of a Divestiture Mill or any related Mill Assets.

G.    At the option of an Acquirer and upon approval by the United States, in its sole discretion, Defendants shall enter into a transition services agreement based upon commercially reasonable terms and conditions.  Such an agreement may not exceed twelve (12) months from the date of divestiture.  Transition services may include information technology support, information technology licensing, computer operations, data processing, logistics support, and such other services as reasonably necessary to operate a Divestiture Mill or related Mill Assets.

H.    Defendants shall warrant to an Acquirer that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of a Divestiture Mill or related Mill Assets, and shall enter into a contractual commitment with the Acquirer that following the sale of a Divestiture Mill, Defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of a Divestiture Mill or any related Mill Assets.

I.    Unless the United States otherwise consents in writing, any divestiture pursuant to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, shall include a Divestiture Mill and all related Mill Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Mill can and will be used by an Acquirer as a viable, ongoing business engaged in producing, distributing, and selling CRB, that the Divestiture Mill will remain viable, and that the divestiture of such assets will remedy the competitive harm alleged in the Complaint.  The divestitures, whether pursuant to Section IV or

-6-

Section V of this Final Judgment,

(1)    shall be made to an Acquirer or Acquirers that, in the United States' sole judgment, have the intent and capability (including the necessary managerial, operational, technical, and financial capability) to compete effectively in the production, distribution, and sale of CRB;

(2)    shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms or conditions of any agreement between an Acquirer and Defendants would give Defendants an ability to unreasonably raise the Acquirer's costs, to lower an Acquirer's efficiency, or otherwise to interfere with the ability of an Acquirer to compete effectively in the production, distribution, and sale of CRB; and

(3)    may be required by the United States, in its sole discretion, to be accomplished by sale of all divestiture assets to a single Acquirer.

J.    As part of a divestiture, and at the option of an Acquirer, Defendants may negotiate a transitional supply agreement or agreements to supply CRB to Defendants' folding carton plants previously supplied by a Divestiture Mill purchased by the Acquirer. Any such agreement shall be subject to the approval of the United States in its sole discretion, shall be on commercially reasonable terms, and shall have a term no longer than three (3) years. The volume requirements during the first year of any such agreement may be up to 100 percent of the 2007 volumes supplied by the particular Divestiture Mill to Altivity's folding carton plants, no more than 75 percent during the second year, and no more than 50 percent during the third year.

## V.    Appointment of Trustee

A.    If Defendants have not accomplished the divestitures ordered by Section IV(A) of this Final Judgment within the time period specified in Section IV(A), Defendants shall notify the

-7-

United States and provide the pertinent facts in writing. Thereafter, upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to accomplish divestitures in the following manner.

(1)    If Defendants have not divested one or both of the Divestiture Mills within the time period specified in Section IV(A), the United States shall seek appointment of a trustee to ensure divestiture of the Wabash Mill and the Philadelphia Mill or the Alternative Asset.

(2)    If, at the time of the trustee's appointment, the Philadelphia Mill has not been divested, the trustee shall seek to divest the Philadelphia Mill within 120 calendar days thereafter. If the Philadelphia Mill has not been divested during this 120-day period, the trustee shall divest the Philadelphia Mill or the Alternative Asset within 90 calendar days thereafter.

(3)    The United States, in its sole discretion, may allow the trustee one or more extensions of the time periods specified in this Section, not to exceed sixty (60) days in total, and shall notify the Court in such circumstances.

B.    After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Mills. The trustee shall have the power and authority to accomplish the divestitures to an Acquirer or Acquirers acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestitures.

C.    Defendants shall not object to a sale by the trustee on any ground other than the

-8-

trustee's malfeasance. Any such objection by Defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.    The trustee shall serve at the cost and expense of Defendants, on such terms and conditions as the United States approves, and shall account for all monies derived from divestitures effected by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Defendants and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of divestiture assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestitures and the speed with which it is accomplished, but timeliness is paramount.

E.    Defendants shall use their best efforts to assist the trustee in accomplishing the required divestitures. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and Defendants shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secrets or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestitures.

F.    After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the divestitures ordered under this Final Judgment. To the extent such reports contain information that the trustee deems

confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring the Divestiture Mills, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to effect the divestitures.

G.    If the trustee has not accomplished the divestitures within seven (7) months after its appointment, and any extension pursuant to Section V(A)(3) of this Final Judgment, the trustee shall promptly file with the Court a report setting forth: (1) the trustee's efforts to accomplish the required divestitures; (2) the reasons, in the trustee's judgment, why the required divestitures have not been accomplished; and (3) the trustee's recommendations. To the extent such report contains information that the trustee deems confidential, such report shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of this Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VI.    Notice of Proposed Divestitures

A.    Within two (2) business days following execution of a definitive divestiture agreement, Defendants or the trustee, whichever is then responsible for effecting the divestitures required herein, shall notify the United States of any proposed divestitures required by Section IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify Defendants. The notice shall set forth the details of the proposed divestitures and list the name, address, and

telephone number of each person not previously identified who offered or expressed an interest

in or desire to acquire any ownership interest in the Divestiture Mills, together with full details of

the same.

B.    Within fifteen (15) calendar days of receipt by the United States of such notice, the

United States may request from Defendants, the proposed Acquirer, any other third party, or the

trustee, if applicable, additional information concerning the proposed divestitures, the proposed

Acquirer, and any other potential Acquirer.  Defendants and the trustee shall furnish any

additional information requested within fifteen (15) calendar days of the receipt of the request,

unless the parties shall otherwise agree.

C.    Within thirty (30) calendar days after receipt of the notice, or within twenty (20)

calendar days after the United States has been provided the additional information requested from

Defendants, the proposed Acquirer, any third party, or the trustee, whichever is later, the United

States shall provide written notice to Defendants and the trustee, if there is one, stating whether

or not it approves or objects to the proposed divestitures.  If the United States provides written

notice that it does not object, the divestitures may be consummated, subject only to Defendants'

limited right to object to the sale under Section V(C) of this Final Judgment.  Absent written

notice that the United States does not object to the proposed Acquirer or upon objection by the

United States, a divestiture proposed under Section IV or Section V shall not be consummated.

Upon objection by Defendants under Section V(C), a divestiture proposed under Section V shall

not be consummated unless approved by the Court.  Notwithstanding the foregoing provisions of

this Section VI, the United States, in its sole discretion, may withhold its approval or objection to

the proposed divestiture of a single Divestiture Mill until such time as the United States concludes

that it can approve an Acquirer or Acquirers for both Divestiture Mills consistent with the terms

of the Final Judgment.

## VII.    Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII.    Asset Preservation

Until the divestitures required by this Final Judgment have been accomplished, Defendants shall take all steps necessary to comply with the Asset Preservation Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestitures ordered by this Court.

## IX.    Affidavits

A.    Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestitures have been completed under Section IV or V, Defendants shall deliver to the United States an affidavit as to the fact and manner of its compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in a Divestiture Mill, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts Defendants have taken to solicit buyers for the Divestiture Mills, and to provide required information to any prospective Acquirer, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Defendants, including limitations on the information, shall be made within fourteen (14) calendar

days of receipt of such affidavit.

B.     Within twenty (20) calendar days of the filing of the Complaint in this matter,

Defendants shall deliver to the United States an affidavit that describes in reasonable detail all

actions Defendants have taken and all steps they have implemented on an ongoing basis to comply

with Section VIII of this Final Judgment. Defendants shall deliver to the United States an

affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits

filed pursuant to this section within fifteen (15) calendar days after the change is

implemented.

C.     Defendants shall keep all records of all efforts made to preserve and divest the

Divestiture Mills until one year after such divestitures have been completed.

## X.     Compliance Inspection

A.     For the purposes of determining or securing compliance with this Final Judgment,

or of determining whether this Final Judgment should be modified or vacated, and subject to any

legally recognized privilege, from time to time duly authorized representatives of the United

States Department of Justice, including consultants and other persons retained by the United

States, shall, upon written request of a duly authorized representative of the Assistant Attorney

General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

(1)     access during Defendants' office hours to inspect and copy, or at the

United States's option, to require Defendants to provide electronic or hard copies of, all books,

ledgers, accounts, records, data, and documents in the possession, custody, or control of

Defendants, relating to any matters contained in this Final Judgment; and

(2)     to interview, either informally or on the record, Defendants' officers,

employees, or agents, who may have their individual counsel present, regarding such matters. The

interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.      Upon the written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If, at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI.     Notification of Future Transactions

A.      Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), Defendants, without providing advance notification to the Antitrust Division of the United States Department of Justice ("DOJ"), shall not directly or

-14-

indirectly acquire any assets of or any interest, including any financial, security, loan, equity or management interest, in any CRB mill or producer in North America during the term of this Final Judgment if the value of such acquisition exceeds $2,000,000.

      B.     Such notification shall be provided to the DOJ in the same format as, and per the instructions relating to the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended, except that the information requested in Items 5 through 9 of the instructions must be provided only with respect to CRB. Notification shall be provided at least thirty (30) calendar days prior to acquiring any such interest, and shall include, beyond what may be required by the applicable instructions, the names of the principal representatives of the parties to the agreement who negotiated the agreement, and any management or strategic plans discussing the proposed transaction. If within the 30-day period after notification, representatives of the DOJ make a written request for additional information, defendants shall not consummate the proposed transaction or agreement until thirty (30) calendar days after submitting all such additional information. Early termination of the waiting periods in this paragraph may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder. This Section shall be broadly construed and any ambiguity or uncertainty regarding the filing of notice under this Section shall be resolved in favor of filing notice.

## XII.     No Reacquisition

Defendants may not reacquire any part of the Divestiture Mills or related Mill Assets during the term of this Final Judgment.

## XIII.     Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this

Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV.    Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

## XV.    Public Interest Determination

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: _____

                    Court approval subject to procedures of the
                    Antitrust Procedures and Penalties Act,
                    15 U.S.C. § 16.


                    _____
                    United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on March *5*, 2008, I caused a copy of the foregoing Complaint, proposed Final Judgment, Competitive Impact Statement, Asset Preservation Stipulation and Order, and Plaintiff United States' Explanation of Consent Decree Procedures to be served on the Defendants in this matter in the manner set forth below:

By electronic mail and United States mail:

**Counsel for Defendant Altivity Packaging LLC**
Joseph F. Tringali, Esq.
Simpson Thacher & Bartlett LLP
423 Lexington Avenue
New York, NY 10017-3954
Telephone:  (212) 455-3840
Facsimile:  (202) 455-2502
Email: jtringali@stblaw.com

**Counsel for Defendant Graphic Packaging International, Inc.**
Randall L. Allen, Esq.
Alston & Bird
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:  (404) 881-7196
Facsimile: (404) 8817777
Email: randallallen@alston.com

**For Plaintiff United States:**

Rebecca A. Perlmutter, Esq.
Litigation I Section
Antitrust Division
United States Department of Justice
1401 H Street, NW, Suite 4000
Washington, DC 20530
Telephone:  (202) 307-6456
Facsimile: (202) 307-5802
Email: rebecca.perlmutter@usdoj.gov